UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

Frank Griffin                                    Civil Action No. 6:04-0788

versus                                           Judge Tucker L. Melançon

Sea Mar Management, L.L.C.                       Magistrate Judge Hill

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by defendant Sea Mar Management, L.L.C. (Sea Mar) [Rec. Doc. 32], an Opposition filed by plaintiff S. J. Beaulieu, Jr., *Chapter 13 Trustee on behalf of Frank Griffin* (Griffin) [Rec. Doc. 46], and defendant Sea Mar's Reply thereto [Rec. Doc. 66]. For the following reasons, defendant's motion will be granted.

*I. Background.*

The present suit, alleging discriminatory employment practices and retaliation in violation of 42 U.S.C. § 2000e, *et seq.*, arises out of incidents during Frank Griffin's employment with defendant Sea Mar. On or about November 23, 1995 Frank Griffin, an African-American, was hired by Willard Robison, Sea Mar's

1

Personnel/Safety Director, to serve as a mate on one of Sea Mar's conventional offshore supply vessels.[1] (*Complaint*, ¶ 3).

After satisfying a four-month probationary period, Griffin was promoted to the position of captain. (*Id*). As captain, Griffin served on the *M/V Cape Breton,* a 220 foot conventional offshore supply vessel, for over six years. (*Id.* at ¶ 4). During this period, Sea Mar enlarged its fleet by adding ten dynamic positioning vessels which, like Sea Mar's conventional offshore supply vessels, are used to transport personnel and supplies to offshore drilling rigs.[2] (*Defendant Motion*, p. 7).

According to the Sea Mar Handbook, captains and mates have the same general job descriptions and duties, regardless of vessel type.[3] (*Defendant Motion, Exhibit 5*, p. 1; *Plaintiff depo.*, p. 55). Sea Mar avers that "there is no difference in the day-

---

[1] On his application, Griffin represented that he had never been convicted of a crime and that he graduated from East Jefferson High School. (*Defendant Motion, Exhibit 3*, pp. 1-2). In truth, Griffin has been convicted of first degree robbery and obtained his GED while incarcerated at Hunt Correctional Facility. (*Opposition*, p. 14). Sea Mar contends that Griffin would not have been hired had his criminal and educational history been disclosed. (*Robison Declaration*, ¶ 4).

[2] The dynamic positioning vessels are slightly shorter than the conventional offshore supply vessels, but have more displacement tonnage. Sea Mar's dynamic positioning vessels are no faster, require the same on-the-job-training, use essentially the same navigational equipment, and require the same United States Coast Guard licensing to operate as do Sea Mar's conventional offshore supply vessels. (*Plaisance depo.*, pp. 18-19; *Plaintiff depo.*, pp. 53-55).

[3] The job description section of the Sea Mar Handbook defines and describes the relevant job title as "Vessel Captain/Mate." (*Defendant Motion, Exhibit 5*, p. 1; *Opposition, Exhibit 22*, p. 1). A note to the job description section only differentiates the two positions by advising that the "Captain" has a supervisory responsibility over the "Mate." (*Id*).

to-day job duties between the captain and mate." (*Defendant Motion*, p. 3). Plaintiff contends that the captain's position is more prestigious and powerful than the mate's position on any vessel. (*Opposition*, p. 14). Defendant concedes that "when the captain is on duty, he is the highest ranking officer, and the mate serves under his direct supervision." (*Defendant Motion*, p. 3). Pay and other employment benefits such as scheduling preference and vessel assignment are determined on an individual basis, considering factors such as performance, seniority, vessel maintenance, safety, and customer relations matters; neither job title or vessel type are considered. (*Id.* at 3, 7, 15).

On August 8, 2002 Frank Griffin allegedly sent a letter to Darrel Plaisance, Sea Mar's Vice President of Operations, concerning race discrimination as a factor in denying employment advancement in terms of pay and assignment to newer vessels. (*Defendant Motion, Exhibit 12*). Plaisance denies receiving the letter; Griffin has no proof that the letter was ever sent. (*Defendant Motion*, p. 18). A different letter submitted by Griffin dated August 15, 2002 was received by Plaisance regarding pay increases for the entire crew of the *M/V Cape Breton.* (*Defendant Motion, Exhibit 13*). Within a week of receipt of this letter, Sea Mar authorized a $15 per day wage increase for plaintiff, raising his daily pay to $310.00. (*Defendant Motion*, p. 18).

On February 10, 2003, Griffin met with Robison and Plaisance to discuss a complaint filed by a Sea Mar customer concerning an incident that occurred on February 5, 2003 while plaintiff was captain of the *M/V Cape Breton*. (*Robison depo.*, p. 70). Although the facts of the underlying incident remain in dispute, plaintiff concedes that the customer became upset and that it "could have been better." (*Opposition,* p. 12; *Plaintiff depo.*, p. 33). Based on Griffin's substantiation of the customer's complaint, Robison and Plaisance concluded that no further investigation was necessary and that discipline was warranted. (*Defendant's Statement of Undisputed Material Facts*, ¶¶ 27-28). Accordingly, Griffin was reclassified as a mate. (*Id*). Plaintiff's $310 per day wage was not reduced, but he did receive a twenty percent bonus pay reduction, resulting in a $312.95 reduction. (*Id*).

On August 28, 2003 Griffin authored a letter to Plaisance acknowledging his "mistake in February," noting his loss of a "good working relationship" with certain Sea Mar administrators. (*Defendant Motion, Exhibit 6*). Since then several complaints against Griffin have been lodged with Sea Mar.[4]

---

[4] On May 2, 2003 Captain Kelly Flowers of the *M/V Cape Misty* filed a complaint against Griffin for refusing to perform work duties aboard the vessel. (*Defendant's Statement of Undisputed Material Facts*, ¶ 40 ). On or about June 2, 2003 plaintiff refused a job assignment. (*Id.* at ¶ 41). On September 15, 2003 Captain Samuel Alsup filed a complaint against Griffin for deliberately disobeying an order. (*Id.* at ¶ 42). On October 26, 2003 Matthew Domangue reported to Sea Mar

On November 22, 2003 plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) claiming racial discrimination. Specifically, Griffin averred that Sea Mar had discriminated against him by failing to train or promote him to positions on Sea Mar's newer, more sophisticated dynamic positioning vessels. (*Defendant Motion, Exhibit 14*). The EEOC issued a Right to Sue letter on January 30, 2004. Plaintiff filed this instant suit on April 2, 2004 including an additional claim that he had been subjected to retaliation in the form of a demotion from captain to mate. (*Complaint, ¶ 10*).

## II. *Summary Judgment Standard.*

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to

---

that on more than one occasion plaintiff acted like he was going to physically hit him. (*Id.* at ¶ 44). In November 2003 Captain Bob Holland of the *M/V Cape Charles* requested that plaintiff no longer be assigned to work under Holland's command. (*Id.* at ¶ 45). On December 17, 2003 Robison met with Griffin to discuss his unsatisfactory behavior. Robison represents that plaintiff became agitated and continued to refuse work. (*Id.* at ¶ 46).

issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Celotex Corp.,* 477 U.S. at 324.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Little*, 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. Analysis.

In order to prevail on a claim of intentional discrimination under 42 U.S.C. § 1981, §2000e or Title VII, a plaintiff must first establish a *prima facie* case of discrimination. *Raggs v. Mississippi Power and Light Co.*, 278 F. 3d 463, 468 (5th Cir. 2002). Where there is alleged discrimination relating to the unfair treatment of an employee, to demonstrate a *prima facie* case of discrimination the plaintiff must

show that: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) either the position was filled by someone not in the protected class, or the person was treated differently because of his race." *Pratt v. City of Houston*, 247 F.3d 601, 606, n.2 (5th Cir. 2001).

If a plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the employer to offer evidence that the actions it took were "justified by a legitimate, nondiscriminatory reason." *Raggs v. Mississippi Power and Light Co.*, 278 F. 3d 463, 468 (5th Cir. 2002) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)). If the employer produces such evidence, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's proffered nondiscriminatory reasons are pre-textual. *Id.* (citations omitted). "[E]vidence of pretext alone is not enough where the plaintiff has created only a weak issue of fact as to whether the employer's reason is untrue, and there is 'abundant and uncontroverted independent evidence that no discrimination [ ] occurred." *Id.*

### A. *Plaintiff's Failure to Train and Failure to Promote Claims.*

Griffin alleges that defendant engaged in discrimination when it denied him training for or promotion to one of Sea Mar's "new more sophisticated boats" (*i.e.* dynamic positioning vessels) in favor of Caucasian employees with equivalent or

inferior experience and seniority. (*Complaint,* ¶ 5). According to Griffin's contention, the newer dynamic positioning vessels are more prestigious than Sea Mar's conventional offshore supply vessels and garner more respect since these types of ships can haul larger loads. (*Opposition,* pp. 21-22). Discriminatory failure to train and failure to promote claims are subject to the same analysis; accordingly, the Court will review both claims concomitantly.

Defendant does not challenge the existence of the first two elements necessary to make a *prima facie* showing of discrimination: (1) Frank Griffin, as an African-American, is a member of a protected class; and (2) he was qualified for duty aboard one of Sea Mar's dynamic positioning vessels. Instead, Sea Mar argues that plaintiff has failed to make a *prima facie* showing that he was subjected to any adverse employment action. (*Defendant Motion*, p. 13). "Title VII does not . . . address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Ackel v. National Communications, Inc.*, 339 F.3d 376, 387 (5th Cir. 2003) (internal citations omitted). "An employment action that does not affect job duties, compensation or benefits is not an adverse employment action for purposes of Title VII." *Roberson v. Game Stop/Babbage's*, 2005 WL 2622977 (5th Cir. 2005). "The effect of an action is evaluated according to an objective standard, and the personal preferences of the employee for one job over another are not considered." *Id.* at 283. As for plaintiff's failure to train claim, the parties agree that

8

there is no prerequisite training regiment; eligibility for employment aboard dynamic positioning vessels and conventional offshore supply vessels alike requires the same on-the-job training. (*Plaintiff's depo.*, p. 58; *Defendant Motion*, p. 14). As such, there is no initial training required for an applicant to become eligible to work on a dynamic positioning vessel. (*Opposition*, p. 20; *Plaisance depo.*, p. 19). Further, the parties agree that the training, qualifications, and requisite duties for a captain and a mate are nearly the same irrespective of whether the vessel is a conventional offshore supply ship or a dynamic positioning vessel. (*Plaintiff depo.*, pp. 53-55; *Defendant Motion*, p. 7).

As for Griffin's failure to promote claim, the Fifth Circuit has held that a lateral transfer does not constitute an adverse employment action. *Burger v. Central Apartment Management*, 168 F.3d 875, 879 (5th Cir. 1999). A change in position is purely lateral where the new position has the same job title, benefits, duties, and responsibilities as the old position. *Id.* at 879 (internal quotations omitted). At Sea Mar, employee pay, scheduling, and benefits are determined without consideration for vessel-type. (*Defendant Motion*, p. 3). As of January 2003, nine dynamic position vessel captains were earning less per day pay than Griffin. (*Id.* at 7). Both vessel types serve the same function within the Sea Mar fleet, the transporting of people and supplies to offshore oil platforms. (*Id.* at 2). Job duties and responsibilities are similar on both Sea Mar's conventional offshore supply vessels

9

and its dynamic positioning vessels. (*Id*). Hence, moving from one type of vessel to the other is not a promotion, but rather a lateral transfer. The Fifth Circuit has held that in the context of a job transfer, the job must be "objectively worse" to constitute an adverse employment action. *Hunt v. Rapides Health Care System*, 277 F.3d 757, 770 (5th Cir. 2001); *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996). Griffin's personal preference and individual perceptions of prestige do not qualify working aboard one type of vessel instead of another as an adverse employment action. As a matter of law, the Court finds that plaintiff has failed to establish a *prima facie* case of discrimination. Therefore, plaintiff's claims of discrimination regarding Sea Mar's failure to train and promote him cannot survive summary judgment.

### B. Plaintiff's Retaliation Claim.

In order to prevail on a claim of retaliation, under 42 U.S.C. § 1981 or Title VII, a plaintiff must first establish a *prima facie* case of discrimination, not unlike the *prima facie* case that must be established to prevail on a claim of discriminatory employment practices (training, promoting, etc.) discussed above. *Raggs,* 278 F. 3d at 468. There are three elements to a *prima facie* case of retaliation: (1) that the plaintiff engaged in protected activity; (2) that an adverse employment action occurred; and (3) that there is a causal link between the protected activity and the adverse action. *Id*. at 471.

If the plaintiff establishes a prima facie case, the Court must engage in the burden-shifting analysis prescribed in *McDonnell Douglas* and its progeny. *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 325 (5th Cir. 2002). If the defendant produces evidence of legitimate, non-discriminatory reasons for its actions, the plaintiff must produce rebuttal evidence indicating that defendant's "stated reason is merely pretext for the real, discriminatory purpose." *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

Griffin claims that Sea Mar retaliated against him by demoting him from captain to mate because of his "prior complaints" and because he "protested the discriminatory treatment he received from Sea Mar." (*Complaint*, ¶¶ 10-11). The Court assumes that plaintiff is referencing the letter he supposedly submitted to Sea Mar on August 9, 2002. (*Defendant Motion, Exhibit 12*).

Even if the Court were to assume that Griffin had actually established a *prima facie* case of retaliatory conduct, Sea Mar has proffered legitimate, non-discriminatory reasons for its decision to reclassify Griffin. The record shows that Griffin lied on his employment application about his educational and criminal history. (*Plaintiff depo.*, pp. 173-74). The parties agree that the February 5, 2003 incident, which plaintiff admits to being at least partly responsible for, damaged Sea Mar's relationship with a customer. (*Plaintiff depo.*, pp. 113-15). Since reclassification, plaintiff has refused job details and has been reported on numerous occasions.

(*Plaintiff depo.*, 137; *Defendant Motion*, pp. 8-10). Other Sea Mar employees, regardless of race, have been reclassified or received reduced bonuses due to disciplinary or performance reasons. (*Defendant Motion*, p. 20). Because Sea Mar has produced such evidence, the burden then shifts back to Griffin to produce evidence that the employer's proffered nondiscriminatory reasons are pre-textual and that racial animus was a motivating factor. *Raggs*, 278 F. 3d at 468 (citations omitted). Business decisions, based on legitimate reasons, are not subject to attack under Title VII, unless they are the result of an illegal motive. *Guthrie v. Tifco Indus.*, 941 F.2d 374, 378 (5th Cir. 1991). Griffin has failed to rebut Sea Mar's legitimate reasons, nor has he put forth any evidence that Sea Mar's reason for changing his title was retaliatory or discriminatory. Moreover, the fact that Sea Mar executives deny ever receiving Griffin's August 9, 2002 letter further eviscerates any retaliatory connection between the complaint and the demotion.

Plaintiff must raise a genuine issue of material fact to avoid summary judgment. Griffin has offered no competent summary judgment evidence beyond his own unsubstantiated allegations of pretext. Therefore, Griffin cannot prevail on his claim of retaliation.

*IV. Conclusion.*

Griffin has not provided any evidence that Sea Mar's failure to train or promote him to positions aboard Sea Mar's dynamic positioning vessels rises to the level of

adverse employment action. Accordingly, his claim of discriminatory hiring/promotion practices must fail. Further, Griffin has failed to rebut the legitimate, non-discriminatory reasons Sea Mar gives for demoting him from captain to mate, thus his retaliation claim must likewise fail. For the foregoing reasons, the Court will grant defendant's Motion for Summary Judgment and dismiss plaintiff's claims against the defendant with prejudice.